## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SEASON TAYLOR and MATTHEW TAYLOR, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br>vs.<br><br>LAKEVIEW LOAN SERVICING, LLC,<br><br>Defendant. | Case No.: 1:22cv21445<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Season Taylor and Matthew Taylor, on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Lakeview Loan Servicing, LLC ("Defendant" or "Lakeview"), and allege, upon personal knowledge as to their own actions and their Counsels' investigations, and upon information and belief as to all other matters, as follows:

### I.        INTRODUCTION

1.      This action stems from Lakeview's failure to secure the sensitive personal information of its customers and employees. Defendant is the fourth largest mortgage loan servicer in the United States.[1] Lakeview obtains certain personally identifying information related to its customers—current and former mortgagees, as well as mortgage applicants—in furtherance of services it performs on their behalf.

2.      Plaintiffs bring this class action against Defendant for its failure to properly secure and safeguard sensitive Personally Identifiable Information provided by and belonging to its customers, including, without limitation, name, address, loan number, and Social Security number

---

[1] https://lakeview.com (last visited April 15, 2022).

and, for some, information provided in connection with a loan application, loan modification, or other items regarding loan servicing ("PII").

3.      On or around October 27, 2021, an intruder gained entry to Defendant's network system, accessed the PII stored therein, and exfiltrated information from Lakeview's systems (the "Data Breach"). In early December 2021, the Defendant identified this "security incident involving unauthorized access to [its] file servers."[2] Defendant determined that "an unauthorized person obtained access to files on [its] file storage servers from October 27, 2021 to December 7, 2021."[3]

4.      On January 31, 2022, the review process generated a preliminary list of individuals affected by the Data Breach. Defendant determined that the unauthorized actor accessed and exfiltrated the PII of more than 2,537,261 current and former Lakeview customers ("Class Members"), including that of Plaintiffs and Class Members.

5.      On or around March 18, 2022, Defendant began notifying Plaintiffs and Class Members of the Data Breach.

6.      By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties to these individuals.  Defendant admits that the unencrypted PII accessed and exfiltrated includes highly sensitive information, such as names, dates of birth, addresses, phone numbers, financial or bank account information, Social Security numbers, insurance information and account numbers, medical information including history, condition, treatment and diagnosis, medical record numbers, driver's license numbers, and email addresses.

7.      The exposed PII of Defendant's current and former customers can be sold on the dark web. Plaintiffs are informed and believes that their information has already been placed onto

---

[2] Exhibit 1 (sample "Notification Letter" sent to California Attorney General's Office).
[3] *Id.*

the dark web. Hackers can now access and/or offer for sale the unencrypted, unredacted PII to criminals. Defendant's current and former customers face a lifetime risk of identity theft, which is heightened by the loss of their Social Security numbers.

8.     This PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect PII of Defendant's current and former customers.

9.     Until notified of the breach, Plaintiffs and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their rest of their lives.

10.     Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Defendant's current and former customers; (ii) warn Defendant's current and former customers of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities. Defendant's conduct amounts to negligence and violates federal and state statutes.

11.     Plaintiffs and Class Members have suffered numerous actual and imminent injuries as a direct result of the Data Breach, including: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damages

to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their PII against theft and not allow access to and misuse of their personal data by others; and (h) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further injurious breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' PII, and, at the very least, are entitled to nominal damages.

12.     Defendant states it will protect the privacy of its customers and use security measures to protect its customers' information from unauthorized disclosure.[4]However, Defendant disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Defendant's current and former customers' and employee's PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiffs and Class Members was compromised through access to and exfiltration by an unknown and unauthorized third party. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

13.     Plaintiffs by this action seek compensatory damages together with injunctive relief to remediate Lakeview's failure to secure their and Class Members' PII, and to provide credit monitoring, identity theft insurance, and credit repair services to protect the Class of Data Breach victims from identity theft and fraud.

---

[4] Exhibit 2 (Defendant's "Privacy Policy").

## II.     PARTIES

14.     Plaintiff Season Taylor is a resident and citizen the State of Florida and intends to remain domiciled in and a citizen of the State of Florida.

15.     Plaintiff Matthew Taylor is a resident and citizen the State of Florida and intends to remain domiciled in and a citizen of the State of Florida.

16.     Plaintiffs are husband and wife.

17.     Plaintiffs received letters dated March 18, 2022 from Defendant concerning the Data Breach. The letters stated unauthorized actors gained access to Lakeview Loan Servicing's network containing her name, address, loan number, Social Security number, and for some, information provided in connection with a loan application, loan modification, or other items regarding loan servicing.

18.     Defendant Lakeview Loan Servicing, LLC is a private mortgage loan servicer organized under the laws of Florida, headquartered at 4425 Ponce de Leon Blvd, Coral Gables, FL 33146, with its principal place of business in Coral Gables, FL.

19.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiffs.  Plaintiffs will seek leave of Court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

20.     All of Plaintiffs' claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III.     JURISDICTION AND VENUE

21.     This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C.§ 1332(d)(2), because this is a class action involving more than 100 Class Members and because the

amount in controversy exceeds $5,000,000, exclusive of interest and costs. Moreover, numerous other Class Members and Defendants are citizens of different states.

22.     The Court has general personal jurisdiction over Defendant because, personally or through its agents, Defendant operated, conducted, engaged in, or carried on a business or business venture in Florida; had offices in Florida; committed tortious acts in Florida; and/or breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida. Defendant is organized under the laws of Florida and headquartered at 4425 Ponce de Leon Blvd, Coral Gables, FL 33146, with its principal place of business in Coral Gables, FL.

23.     Venue is proper in this district under 28 U.S.C. §§ 1391(a)(1), 1391(b)(1), 1391(b)(2), and 1391(c)(2) as a substantial part of the events giving rise to the claims emanated from activities within this district, Defendant conducts substantial business in this district, and Defendant resides in this district. Further, Defendant is headquartered and does business in and/or has offices for the transaction of its customary business in this district.

### IV.     FACTUAL ALLEGATIONS

#### *Background*

24.     Defendant is the fourth largest mortgage loan servicer in the United States.[5] Lakeview owns the servicing rights to millions of Americans' mortgage loans. Defendant partners with "several Servicing partners to process payments, manage the escrow, and provide customer service for [more than 1.4 million individuals'] existing mortgage[s]" per year.[6]

25.     Plaintiffs and Class Members who obtained loan services from Defendant were required to entrust some of their most sensitive and confidential information, including, without limitation: name, address, loan number, Social Security number, and additional information

---

[5] https://lakeview.com (last visited April 15, 2022).
[6] *Id.*

provided in connection with a loan application, loan modification, or other items regarding loan servicing. Information that Plaintiffs entrusted to Defendant is static, does not change, and can be used to commit myriad financial crimes.

26.     In providing services to Plaintiffs and Class Members, Defendant generated and retained additional sensitive personal information about Plaintiff and Class Members, including information concerning Defendant's loan services.

27.     Plaintiffs and Class Members, as current and former customers of Defendant, relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.  Defendant's current and former customers demand security to safeguard their PII.

28.     Defendant had a duty to adopt reasonable measures to protect Plaintiffs' and Class Members' PII from involuntary disclosure to third parties.

### The Data Breach

29.     Defendant has a posted Privacy Policy on its website.[7] The Privacy Policy states that Defendant collects personal information from its customers, that financial companies "choose how they share your personal information"—though consumers have rights with respect to the sharing of that information—and that Defendant does not sell consumer information.[8]

30.     The Privacy Policy also provides a list of instances in which disclosure of PII could be made to its affiliates and other entities without prior written authorization—none of which is applicable here.[9]

---

[7] Ex. 2.
[8] *Id.*
[9] *Id.*

31.     On or around October 27, 2021, an intruder gained unauthorized access to the Lakeview network.[10] Lakeview discovered the intrusion on or around December 7, 2021.[11] Before that discovery, the intruder accessed and exfiltrated the PII of 2,537,261 individuals.[12]

32.     On or around March 18, 2022, Defendant reported the Data Breach to the attorneys general offices of California,[13] Maine,[14] Massachusetts,[15] and Vermont, among other states.[16] On or about that date, Defendant also began notifying Plaintiff and Class Members of the Data Breach.

33.     On or around March 16, 2022, Defendant sent Plaintiff and Class members a form "Notice of Data Breach" substantially similar to the sample letters provided to the state Attorneys General.[17]

34.     The sample letters slightly varied in length and detail provided. The sample letter to the California Attorney General's Office stated in part:

> Lakeview Loan Servicing, LLC ("Lakeview") understands the importance of protecting the information we maintain. We are writing to inform you of an incident that involved some of your information. This notice explains the incident, measures we have taken, and steps that you may consider taking.
>
> **What Happened?**
>
> Lakeview owns the servicing rights to your mortgage loan. A security incident involving unauthorized access to our file servers was identified in early December 2021. Steps were immediately taken to contain the incident, notify law enforcement, and a forensic investigation firm was engaged. The investigation determined that an unauthorized person obtained access to files on our file storage servers from

---

[10] Exhibit 3 (sample "Notice of Data Breach" sent to Maine Attorney General's Office).
[11] *Id.*
[12] OFFICE OF THE MAINE ATTORNEY GENERAL, Data Breach Notification, *available at* https://apps.web.maine.gov/online/aeviewer/ME/40/3d0c184e-e78c-4123-8ce8-8535f71facd3.shtml (last visited April 15, 2022).
[13] Ex. 1.
[14] Ex. 3.
[15] Exhibit 4 (sample "Notice of Data Breach" sent to Massachusetts Attorney General's Office).
[16] Exhibit 5 (sample "Notice of Data Breach" sent to Vermont Attorney General's Office).
[17] *See* Ex. 4.

October 27, 2021 to December 7, 2021. The accessed files were then reviewed by our investigation team to identify the content.

**What Information Was Involved?**

On January 31, 2022, the review process generated a preliminary list of individuals, including you, whose name, address, loan number, and Social Security number were included in the files. We then took extensive measures to review that list to ensure accuracy and prepare the list to be used to mail notification letters. For some, the accessed files may also have included information provided in connection with a loan application, loan modification, or other items regarding loan servicing. The additional loan related information in the files is not the same for all individuals.

**What We Are Doing.**

We regret that this incident occurred and apologize for any inconvenience. Additional steps are being taken to further enhance our existing security measures.[18]

35.     Defendant admitted in the sample letter that unauthorized third persons accessed and removed from its network systems sensitive information about current and former customers of Defendant, including, without limitation: "name, address, loan number, and Social Security number" and, for some, "information provided in connection with a loan application, loan modification, or other items regarding loan servicing."[19] This sensitive information is static, cannot change, and can be used to commit myriad financial crimes.

36.     Plaintiffs' and Class Members' unencrypted information may have already been leaked onto the dark web, and/or may simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of the affected current and former customers.  Unauthorized individuals can access the PII of Defendant's current and former customers now that it has been stolen.

---

[18] *Id.* at 1.
[19] *Id.*

37.     Defendant did not use reasonable security procedures and practices suitable or adequate to protect the sensitive, unencrypted information it was maintaining for current and former customers, causing the access and/or exfiltration of the PII of more than 2,537,261 individuals.

### *Defendant Acquires, Collects and Stores Plaintiff's and Class Members' PII.*

38.     Defendant acquired, collected, and stored the PII of Defendant's current and former customers.

39.     As a condition of doing business with Defendant, Defendant requires that its customers entrust Defendant with highly confidential PII.

40.     By obtaining, collecting, and storing Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII from disclosure.

41.     Plaintiffs and the Class Members have taken reasonable steps to maintain the confidentiality of their PII.  Plaintiffs and the Class Members, as current and former customers, relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### *Securing PII and Preventing Breaches*

42.     Defendant could have prevented this Data Breach by properly securing and encrypting Plaintiffs' and Class Members' PII.  Additionally, Defendant could have destroyed data, including old data that Defendant had no legal right or responsibility to retain.

43.     Defendant's negligence in safeguarding Defendant's current and former customers' PII is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data, especially sensitive financial data.

44.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiffs and Class Members from being compromised.

45.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[20] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[21]

46.     The ramifications of Defendant's failure to keep secure Defendant's current and former customers' PII are long lasting and severe. Once Social Security numbers and other PII have been stolen, fraudulent use of that information and damage to victims may continue for years.

### Value of Personal Identifiable Information

47.     The PII of individuals is of high value to criminals, as evidenced by the prices they will pay for it on the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[22] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[23] Criminals also can purchase access to entire

---

[20] 17 C.F.R. § 248.201 (2013).

[21] *Id.*

[22] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the- dark-web-how-much-it-costs/ (last accessed April 15, 2022).

[23] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed April 15, 2022).

sets of information obtained from company data breaches from $900 to $4,500.[24]

48.     Social Security numbers are among the most sensitive kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[25]

49.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against potential misuse of a Social Security number is not permitted; an individual instead must show evidence of actual, ongoing fraud to obtain a new number.

50.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[26]

---

[24] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed April 15, 2022).
[25] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed April 15, 2022).
[26] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last accessed April 15, 2022).

51.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, in that situation, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—name, birthdate, financial history, and Social Security number.

52.     This data commands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[27]

53.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

54.     The PII of Plaintiffs and Class Members was taken by hackers to engage in identity theft and/or to sell it to other criminals who will purchase the PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

55.     Further, there may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[28]

---

[27] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed April 15, 2022).

[28] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last visited Mar. 30, 2022).

56.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding Defendant's current and former customers' PII, including Social Security numbers and financial account information, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Defendant's current and former customers as a result of such a breach.

57.     Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damage in addition to any fraudulent use of their PII.

58.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, comprising millions of individuals' detailed and confidential personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

59.     Although Defendant has offered its current and former customers identity monitoring services for a limited time through Kroll, the offered services are inadequate to protect Plaintiffs and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

60.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Defendant's current and former customers.

***Plaintiff's Experience***

61.     Plaintiffs used Lakeview Loan Services' services when they took out a mortgage on her home.  As a condition to receiving services at Lakeview, upon information and belief,

Plaintiff Rivera's PII was provided by her as part of her loan services, which was then entered into Lakeview's database and maintained by Defendant.

62.     Plaintiffs greatly value their privacy and PII, especially when receiving loan and financial services. Prior to the Data Breach, Plaintiffs took reasonable steps to maintain the confidentiality of their PII.

63.     Plaintiffs received a letter dated March 18, 2022 from Defendant concerning the Data Breach.[29] The letter stated that unauthorized actors gained access to Lakeview Loan Servicing's network containing her name, address, loan number, Social Security number, and potentially, information provided in connection with a loan application, loan modification, or other items regarding loan servicing.

64.     Recognizing the present, immediate, and substantially increased risk of harm Plaintiffs face, Defendant offered them a two-year subscription to a credit monitoring service. However, Plaintiffs have not signed up for the program, as they have an inherent mistrust of the Defendant following the Data Breach.

65.     Since learning of the Data Breach, Plaintiffs have spent additional time reviewing their bank statements and credit cards.

66.     Plaintiffs have experienced an increase of other spam calls, text messages and emails after the Data Breach.

67.     The Data Breach has caused Plaintiffs to suffer significant fear, anxiety, and stress, which has been compounded by the fact that Lakeview has not been forthright with information about the Data Breach.

---

[29] Exhibit 6 (Plaintiff's "Notice of Data Breach" letter).

68.     Plaintiffs plan on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing their depository, credit, and other accounts for any unauthorized activity.

69.     Additionally, Plaintiffs are very careful about sharing her PII. They have never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

70.     Plaintiffs store any documents containing their PII in a safe and secure location or destroys the documents. Moreover, they diligently choose unique usernames and passwords for their various online accounts.

71.     On or about March 31, 2022, an unauthorized purchase from Boot Barn (www.bootbarn.com) was attempted on Plaintiffs' American Express account. Subsequently, Plaintiffs received an alert e-mail from American Express that another, much larger purchase had been attempted on their account. Plaintiffs were forced to freeze their American Express card and contact American Express to request a new card number and physical credit card.

72.     Plaintiffs also contacted Boot Barn to determine who used the American Express card but received little responsive information except for an e-mail address associated with the attempted transaction. Plaintiffs then purchased a membership at Been Verified (www.beenverified.com) to attempt to ascertain who owned the e-mail address used for the Boot Barn purchase. This proved unsuccessful.

73.     Plaintiffs have a continuing interest in ensuring that their PII, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

## V.       CLASS ALLEGATIONS

74.      Pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3), 23(c)(4) and/or

23(c)(5), Plaintiffs seek to bring this class action on behalf of themselves and a Class (the "Class")

defined as follows.

**All individuals in the United States whose PII was accessed or exfiltrated during the Data Breach of Lakeview Loan Servicing, LLC, in 2021.**

75.      Excluded from the Class are the following individuals and/or entities: Defendant

and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which

Defendant has a controlling interest; all individuals who make a timely election to be excluded

from this proceeding using the correct protocol for opting out; any and all federal, state or local

governments, including but not limited to their departments, agencies, divisions, bureaus, boards,

sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this

litigation, as well as their immediate family members and staff.

76.      Plaintiffs reserve the right to modify or amend the definition of the proposed class

before the Court determines whether certification is appropriate.

77.      <u>Numerosity</u>. Consistent with Fed. R. Civ. P. 23(a)(1), the Class Members are so

numerous that their joinder is impracticable. While the exact number of Class Members is

unknown, upon information and belief, it is in excess of two and a half million.  The number and

identities of Class Members can be ascertained through Defendant's records.

78.      <u>Commonality</u>. Consistent with Fed. R. Civ. P. 23(a)(2) and (b)(3), questions of law

and fact common to the Class exist and predominate over any questions affecting only individual

Class Members. These include:

    a.      Whether Defendant failed to adequately safeguard the PII of Plaintiffs

            and Class Members;

b.      Whether and to what extent Defendant had a duty to protect the PII of Plaintiffs and Class Members;

c.      Whether Defendant had duties not to disclose the PII of Plaintiffs and Class Members, respectively, to unauthorized third parties;

d.      Whether Defendant had a duty not to use the PII of Plaintiffs and Class Members for non-business purposes;

e.      Whether and when Defendant learned of the Data Breach;

f.      Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

g.      Whether Defendant committed violations by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised;

h.      Whether Defendant failed to implement and maintain reasonable security procedures and practices adequate to protect the information compromised in the Data Breach, considering its nature and scope;

i.      Whether Defendant has adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.      Whether Defendant engaged in unfair, unlawful, or deceptive practices, including by failing to safeguard the PII of Plaintiffs and Class Members;

k.      Whether Plaintiffs and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct, and if so, in what amount;

l.      Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct, and if so, in what amount; and

    m.   Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

79.   <u>Typicality</u>. Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendant's misfeasance, and their claims arise under the same legal doctrines.

80.   <u>Policies Generally Applicable to the Class</u>. As provided under Fed. R. Civ. P. 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct in relation to the Class and making final injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly, and Plaintiffs challenge these policies by reference to Defendant's conduct with respect to the Class as a whole.

81.   <u>Adequacy of Representation</u>. Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Neither Plaintiff has a disabling conflict of interest with any other Member of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class, and the infringement of rights and the damages they have suffered are typical of other Class Members. Plaintiffs also have retained counsel experienced in complex class action litigation, and they intend to prosecute this action vigorously.

82.   <u>Superiority and Manageability</u>. Consistent with Fed. R. Civ. P. 23(b)(3), class treatment is superior to all other available methods for the fair and efficient adjudication of this controversy. Among other things, it will permit a large number of Class Members to prosecute

their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Moreover, class action treatment will permit the adjudication of relatively modest claims by Class Members who could not individually afford to litigate a complex claim against a large corporation such as Defendant. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

83.     Particular issues, such as questions related to Defendant's liability, are also appropriate for certification under Fed. R. Civ. P. 23(c)(4) because the resolution of such common issues would materially advance the resolution of this matter and the parties' interests therein.

84.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1), in that the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. Prosecution of separate actions by Class Members also would create the risk of adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

85.     Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

86.     As a condition of receiving their mortgage from partners of Defendant, Defendant's current and former customers were obligated to provide and entrust Defendant with certain PII,

including their name, birthdate, address, loan number, Social Security number, and information provided in connection with a loan application, loan modification, or other items regarding loan servicing.

87.    Plaintiffs and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

88.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and the Class could and would suffer if the PII were wrongfully disclosed or obtained by unauthorized parties.

89.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of its current and former customers' PII involved an unreasonable risk of harm to Plaintiffs and the Class, including harm that foreseeably could occur through the criminal acts of a third party.

90.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiffs' and Class Members' information in Defendant's possession was adequately secured and protected.

91.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove former customers' PII it was no longer required to retain pursuant to regulations.

92.    Defendant had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and the Class's PII, and to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiffs and the Class.

93.     Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiffs and the Class.  That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential PII, a mandatory step in obtaining services from Defendant.

94.     Defendant were subject to an "independent duty," untethered to any contract between Defendant and Plaintiff and the Class, to maintain adequate data security.

95.     A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

96.     Plaintiffs and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiffs and the Class, the critical importance of adequately safeguarding that PII, and the necessity of encrypting PII stored on Defendant's systems.

97.     Defendant's own conduct created a foreseeable risk of harm to Plaintiffs and the Class. Defendant's wrongful conduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decision not to comply with industry standards for the safekeeping of Plaintiffs' and the Class's PII, including basic encryption techniques available to Defendant.

98.     Plaintiffs and the Class had no ability to protect their PII that was in, and remains in, Defendant's possession.

99.     Defendant was in a position to effectively protect against the harm suffered by Plaintiffs and the Class as a result of the Data Breach.

100.    Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiffs and the Class within Defendant's possession was compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

101.    Defendant has admitted that the PII of Plaintiffs and the Class was wrongfully accessed by unauthorized third persons as a result of the Data Breach.

102.    Defendant, through its actions and inaction, unlawfully breached its duties to Plaintiffs and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiffs and the Class when the PII was within Defendant's possession or control.

103.    Defendant improperly and inadequately safeguarded the PII of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

104.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect its current and former customers' PII in the face of increased risk of theft.

105.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former customers' PII.

106.    Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove former customers' PII it was no longer required to retain pursuant to regulations.

107.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiffs and the Class the existence and scope of the Data Breach.

108.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiffs and the Class, the PII of Plaintiffs and the Class would not have been compromised.

109.    There is a close causal connection between (a) Defendant's failure to implement security measures to protect the PII of Plaintiff and the Class and (b) the harm or risk of imminent harm suffered by Plaintiffs and the Class. Plaintiffs' and the Class' PII was accessed and exfiltrated as the direct and proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

110.    Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of businesses, such as Defendant, of failing to implement reasonable measures to protect PII. The FTC Act and related authorities form part of the basis of Defendant's duty in this regard.

111.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the damages that would result to Plaintiff and the Class.

112.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*. Plaintiffs and the Class are within the class of persons that the FTC Act was intended to protect.

113.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses,

which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

114.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the current and former customers' PII in its continued possession; and (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class Members.

115.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

116.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class have suffered and will suffer the continued risks of

exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

117.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs are now at an increased risk of identity theft or fraud.

118.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs are entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

**COUNT II**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

119.    Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 118.

120.    Defendant acquired and maintained the PII of Plaintiffs and the Class, including name, birthdate, address, loan number, Social Security number, and information provided in connection with a loan application, loan modification, or other items regarding loan servicing.

121.    At the time Defendants acquired the PII and PII of Plaintiffs and the Class, there was a meeting of the minds and a mutual understanding that Defendants would safeguard the PII and not take unjustified risks when storing the PII.

122.    Plaintiffs and the Class would not have entrusted their PII to Defendants had they known that Defendants would make the PII internet-accessible, not encrypt sensitive data elements such as Social Security numbers, and not delete the PII that Defendants no longer had a reasonable need to maintain.

123.     Prior to the Data Breach, Defendant published the Privacy Policy, agreeing to protect and keep private financial information of Plaintiff and the Class.

124.     Defendant further promised to comply with industry standards and to ensure that Plaintiffs' and Class Members' PII would remain protected.

125.     Implicit in the agreement between Plaintiffs and Class Members and the Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiffs and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiffs and Class Members from unauthorized disclosure or uses, and (f) retain the PII only under conditions that kept such information secure and confidential.

126.     In collecting and maintaining the PII of Plaintiffs and the Class and publishing the Privacy Policy, Defendant entered into contracts with Plaintiffs and the Class requiring Defendant to protect and keep secure the PII of Plaintiff and the Class.

127.     Plaintiffs and the Class fully performed their obligations under the contracts with Defendant.

128.     Defendant breached the contracts they made with Plaintiffs and the Class by failing to protect and keep private financial information of Plaintiffs and the Class, including failing to (i) encrypt or tokenize the sensitive PII of Plaintiff and the Class, (ii) delete such PII that Defendant no longer had reason to maintain, (iii) eliminate the potential accessibility of the PII from the internet where such accessibility was not justified, and (iv) otherwise review and improve the security of the network system that contained such PII.

129.     As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; additional time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, credit freezes, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

130.     As a direct and proximate result of Defendant's breach of contract, Plaintiffs are at an increased risk of identity theft or fraud.

131.     As a direct and proximate result of Defendant's breach of contract, Plaintiffs are entitled to and demand actual, consequential, and nominal damages and injunctive relief, to be determined at trial.

## <u>COUNT III</u>
## Breach of Fiduciary Duty
## (On Behalf of Plaintiff and the Class)

132.     Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 132.

133.     A relationship existed between Plaintiffs and the Class and Defendant in which Plaintiffs and the Class put their trust in Defendant to protect the private information of Plaintiffs and the Class. Defendant accepted that trust and the concomitant obligations.

134.    Plaintiffs and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and not disclose their PII to unauthorized third parties.

135.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and the Class could and would suffer if the PII were wrongfully disclosed.

136.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of its current and former customers' PII involved an unreasonable risk of harm to Plaintiffs and the Class, including harm that foreseeably could occur through the criminal acts of a third party.

137.    Defendant's fiduciary duty required it to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiffs' and the Class's information in Defendant's possession was adequately secured and protected.

138.    Defendant also had a fiduciary duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and the Class's PII. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiffs and the Class.  That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant, and because Defendant was the only party in a position to know of its inadequate security measures and capable of taking steps to prevent the Data Breach.

139.    Defendant breached the fiduciary duty that it owed to Plaintiffs and the Class by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing to protect the private information of Plaintiff and the Class.

140.    Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiffs and the Class.

141.    But for Defendant's breach of fiduciary duty, the damage to Plaintiffs and the Class would not have occurred.

142.    Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and the Class.

143.    As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiffs are entitled to and demand actual, consequential, and nominal damages and injunctive relief, to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class Members, request judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Class as defined herein, and appointing Plaintiffs and their counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and the Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and the Class Members;

C.    For injunctive relief requested by Plaintiffs, including but not limited to, injunctive

and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an order:

i.   prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.   requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii.   requiring Defendant to delete, destroy, and purge the personally identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

iv.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personally identifying information of Plaintiffs and Class Members;

v.   prohibiting Defendant from maintaining Plaintiffs' and Class Members' personally identifying information on a cloud-based database;

vi.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors; internal personnel to run automated security monitoring;

vii.   requiring Defendant to audit, test, and train its security personnel regarding any

new or modified procedures;

viii.  requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other areas of Defendant's systems;

ix.  requiring Defendant to conduct regular database scanning and securing checks;

x.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personally identifying information, as well as protecting the personally identifying information of Plaintiff and Class Members;

xi.  requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.  requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personally identifying information;

xiii.  requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and

assess whether monitoring tools are appropriately configured, tested, and updated;

xiv. requiring Defendant to adequately educate all Class Members about the threats that they face as a result of the loss of their confidential personally identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xv. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and, for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to Class Counsel, and to report any material deficiencies or noncompliance with the Court's final judgment;

D.   For an award of damages, including actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E.   For an award of reasonable attorneys' fees, costs, and litigation expenses, as allowed by law;

F.   For prejudgment interest on all amounts awarded; and

G.   Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand that this matter be tried before a jury.

Date: 5/10/2022                                    Respectfully submitted,

                                         */s/ Craig C. Marchiando*
                                        Craig C. Marchiando

**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660
(757) 930-3662 fax
craig@clalegal.com

JOHN A. YANCHUNIS
RYAN D. MAXEY
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

*Attorneys for Plaintiffs*